```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION

STEVEN A. SREDL,                    )
                                    )
              Plaintiff,            )
                                    )
         vs.                        )    No. 4:05CV585-DJS
                                    )
DEERE & COMPANY,                    )
                                    )
              Defendant.            )
```

## ORDER

While attempting to unclog ice and slush from a snow blower with a stick, plaintiff lost portions of three fingers after the impeller of the machine caught the stick and dragged it along with plaintiff's left hand into the blower. In the instant action plaintiff asserts four counts against defendant, the snow blower manufacturer, namely: dangerous condition, defective design, failure to warn, and defective electrical design. Now before the Court are defendant's motion for partial summary judgment and its motion to exclude the testimony of Dr. Terry Lehnhoff, plaintiff's proposed expert, pursuant to Fed. R. Evid. 104(a), 403, 702, and 703, and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). In addition to the testimony of Dr. Lehnhoff, defendant seeks to exclude defendant's technical manual associated with the Deere Model 826 Snow Blower at issue. Upon careful consideration of the parties' filings, the Court will deny defendant's partial summary judgment motion and grant its Daubert motion in part.

The following alleged facts are pertinent to the analysis of the instant motions. Defendant's snow blower includes two safety levers--one on each of the handles. The user must depress at least one of the levers for the snow blower to function. The blower is designed such that the engine will not continue to run when both levers are disengaged. While plaintiff was operating the snow blower, snow stopped being blown out of the discharge chute. Plaintiff released both levers, but the machine's engine did not stop. Plaintiff inserted a twelve-inch stick into the blower's discharge chute to remove a clog. The impeller caught the stick and pulled it along with plaintiff's gloved left hand into the blower.

Dr. Lehnhoff, a professor emeritus of Mechanical and Aerospace Engineering at the University of Missouri-Rolla, examined the blower and concluded that the engine had failed to turn off when the levers were released because a red wire associated with the safety levers had been improperly connected to the engine ground. Plaintiff and his parents, the owners of the blower, never took the blower to a shop of any kind for repairs or maintenance. Plaintiff and two of his friends admit to having done minor repair, but deny having worked with the electrical wiring.

Lehnhoff contends that defendant's technical manual associated with the blower contains a circuit diagram which improperly indicates that the red wire should be grounded as it was

2

in plaintiff's blower. The manual was only provided to defendant's service centers and other dealers, but not to consumers such as plaintiff. As plaintiff never possessed the technical manual and the blower was never serviced by anyone other than plaintiff and his two friends, the defendant argues that the technical manual is irrelevant and that partial summary judgment should be entered in defendant's favor on plaintiff's arguments that the manual indicates that defendant or a service center with a copy of the manual improperly connected the red wire to the engine ground.

Defendant's motion is not well taken and appears to fall more into the vein of a motion in limine to exclude testimony concerning the technical manual. Because the shop diagrams from 1979--when the blower was made--are allegedly unavailable, the technical manual may evidence the content of the diagrams given that both documents were produced by defendant to describe the same product. The Court is not persuaded that the technical manual is irrelevant as it may indicate that the snow blower was manufactured incorrectly by defendant or altered before sale by the snow blower's seller. Consequently, the Court will deny defendant's motion for partial summary judgment.

Under Daubert, district courts are to perform a "gatekeeping" function and insure that proffered expert testimony is both relevant and reliable. See, e.g., Penney v. Praxair, Inc., 116 F.3d 330, 333 (8th Cir. 1997); Pestel v. Vermeer Mfg. Co., 64 F.3d 382, 384 (8th Cir. 1995). When assessing the reliability of

expert testimony, the Court is to consider (1) whether the concept has been tested, (2) whether the concept has been subject to peer review, (3) what the known or potential rate of error is, and (4) whether the concept is generally accepted by the relevant scientific community. See Daubert, 509 U.S. at 593-94.

Lehnhoff has proposed five changes to the design that may have prevented this incident, namely that: (1) the operator should have to depress both safety paddles to operate the blower; (2) the discharge chute should have a flap to visually emphasize the need to be careful; (3) the snow blower should emit an audible, periodic beeping noise when the auger is turning; (4) defendant should have provided a safe clean-out stick with the snow blower; and (5) better warning stickers should be placed on the snow blower. Prior to his involvement in this case, Lehnhoff had never operated, let alone designed, a snow blower. Even while involved in this case, Lehnhoff has never operated a snow blower in snowy conditions. Pursuant to F.R.E. 702 and upon analysis of the five proposals, the Court is not persuaded that Lehnhoff's testimony concerning the five proposals will assist the trier of fact as it is based on unreliable principles and methods and these methods have been unreliably applied to the facts of the case.[1]

---

[1] Plaintiff in opposing the Daubert motion repeatedly references exhibits #5-11 attached to his memorandum in opposition. These exhibits do not provide the proper support for plaintiff's assertions as all but one of these exhibits are unsigned letters allegedly from Lehnhoff to plaintiff's counsel. The remaining exhibit, #6, is entitled "Preparation and follow up for the

"An expert proposing safety modifications must demonstrate by some means that they would work to protect the machine operators but would not interfere with the machine's utility." Unrein v. Timesavers, Inc., 394 F.3d 1008, 1012 (8th Cir. 2005). If defendant's snow blower only operated with both levers depressed, as Lehnhoff suggests it should, the user would be unable to change the direction of the discharge chute while turning the blower to clear adjacent strips of snow-covered ground. If the operator did not change the direction of the chute snow would be blown onto adjacent already-cleared strips. To prevent this, the operator would have to shut off the blower after clearing each strip and turn the discharge chute--a very inefficient mode of operation.

Lehnhoff has not designed or drawn a blower with this modification, nor has he submitted it to peer review and testing. Furthermore, given that Lehnhoff's recommended dual safety-lever system would not have prevented the improper grounding of the "red wire," his opinions would not assist the trier of fact as his methods were not applied reliably to the facts of this case.

With respect to Lehnhoff's proposed flap, Lehnhoff has not designed a flap capable of functioning under the constant bombardment of snow and ice discharged from an operating blower.

---

August 8 Examination of the John Deere 826 Snow Blower by John Deere Representatives." Exhibit #6 does not indicate who authored it, nor does it contain a signature attesting to the document's accuracy.

Additionally, Lehnhoff has not tested the flap or submitted it to peer review.

Lehnhoff has also failed to formally design, test or submit to peer review the audible alert system he proposes. It is unclear whether the auger and impeller were actually rotating when plaintiff initially inserted the stick into the discharge chute. If plaintiff cleared a clog in the chute and enabled the impeller to rotate, the alert system would not have prevented the accident as it would not have sounded until after the stick was already in the chute. If the system sounded when the engine was in operation, Lehnhoff's change would not have prevented the accident as plaintiff knew the engine was still operating when he inserted the stick in the chute.

Just as with Lehnhoff's other recommendations, he has not formally designed, tested or found the rate of error of his proposed "clean-out stick." Lehnhoff recommends that the stick be made out of nylon or metal, and comments that "an instrument could have been designed to prevent what happened." (Lehnhoff Depo. [Doc. #40-6] at 95.) Lehnhoff, himself, has failed to propose a design. Furthermore, inserting a metal rod into an operating impeller would likely break the machine and potentially cause metal shards to fly out of the chute at the operator--two undesirable consequences.

Finally, Lehnhoff's proposed amendments to the warning labels are equally unpersuasive. In Lehnhoff's own words, "My

6

expertise is in mechanical design and I am well qualified to describe warnings for the kinda [sic] of things that I design. But I am not a warnings expert that you would hire to produce a warning label for some purpose." (Lehnhoff Depo. [Doc. #42-12] at 19.) Lehnhoff has not recommended a particular warning, tested it, or submitted it to peer review.

"[T]here are many different kinds of experts, and many different kinds of expertise." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). "[A]n expert who is a mechanical engineer is not necessarily qualified to testify as an expert on any issue within the vast field of mechanical engineering." Shreve v. Sears, Roebuck & Co., 166 F. Supp. 2d 378, 392 (D. Md. 2001). While Lehnhoff may have some expertise in certain areas of mechanical engineering, it is readily apparent that his expertise does not extend to warnings associated with snow blowers.

Given Lehnhoff's lack of familiarity with snow blowers and his failure to test, construct, submit to peer review, or even design his proposed safety measures, the Court is persuaded to grant plaintiff's Daubert motion in part. See Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1084 (8th Cir. 1999) (finding that trial court did not abuse its broad discretion in concluding that the proffered testimony flunked the reliability prong of Daubert when the expert had "not attempted to construct or even draw the suggested device, much less test its utility as a safety device or its compatibility with the [device's] proper function"). Lehnhoff

7

has not provided this Court with any "basis for [it] to believe that his opinions [on design changes] are anything more than unabashed speculation." Id. Consequently, the Court will exclude Lehnhoff's testimony concerning any of his recommended design changes. However, the Court has not been persuaded to exclude Lehnhoff's remaining opinions and testimony, which include opinions concerning the technical manual and the operation of the snow blower.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion for partial summary judgment [Doc. #41] is denied.

**IT IS FURTHER ORDERED** that defendant's motion to exclude the testimony of plaintiff's proposed expert Dr. Terry Lehnhoff [Doc. #39] is granted in part to the extent that Dr. Lehnhoff will not be permitted to testify to any of his recommended changes to the design of the Deere Model 826 Snow Blower. In all other respects, defendant's motion is denied.

Dated this ___18th___ day of September 2006.

/s/Donald J. Stohr
UNITED STATES DISTRICT JUDGE